IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MITCHELL B., )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, Acting )<br>Commissioner of Social Security, )<br>)<br>    Defendant. ) | Case No. 22-cv-00077-SH |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Mitchell B. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.     Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test

has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff applied for Title II disability benefits with a protective filing date of October 24, 2019. (R. 31, 204-07.) In his application, Plaintiff alleged he has been unable to work since August 31, 2018, due to conditions including spinal stenosis and degenerative disc disease. (R. 204, 238.) Plaintiff was 50 years old at the time of the ALJ's decision. (R. 48, 204.) Plaintiff has a high school education and past relevant work as an aircraft mechanic. (R. 72, 239.)

Plaintiff's claim was denied initially and upon reconsideration. (R. 109-12, 114-19.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on June 14, 2021. (R. 53-77, 120-21.) The ALJ then denied benefits and found Plaintiff not disabled. (R. 31-48.) The Appeals Council denied review on December 22, 2021 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff appeals.

## III.    The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2023. (R. 33.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 34.) At step two, the ALJ found that Plaintiff had the following severe impairments: (1) obesity; (2) lumbar degenerative disc disease and stenosis; (3) lumbar facet

3

arthropathy; (4) lumbar radiculopathy; (5) lumbar post-laminectomy syndrome; and (6) chronic pain syndrome. (*Id.*) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 35-38.)

After considering certain evidence, the ALJ concluded that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b)" with the following limitations:

> [T]he claimant should not climb ladders, ropes, or scaffolds. He also should not crouch and crawl. He is able occasionally to climb ramps and stairs. The claimant is also able to occasionally stoop, kneel, and balance on uneven, moving, or narrowing surfaces. The claimant should not perform work involving any exposure to unprotected heights, dangerous moving machinery, and vibrations. He should have no exposure to extreme cold temperatures, defined as temperatures under 30 degrees.

(R. 38.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 38-46.) At step four, the ALJ found Plaintiff unable to perform his past relevant work as an aircraft mechanic. (R. 46.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as collator operator, routing clerk, and merchandise marker. (R. 46-47.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 47.)

**IV.   Issues**

On appeal, Plaintiff asserts the ALJ erred by failing "to properly consider [his] need to lie down and [his] limited ability to stand and walk related to his back pain as required by" Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 (Oct. 25, 2017). (ECF No. 13 at 8.) Plaintiff maintains that the ALJ's mischaracterization of his symptom testimony (*id.* at 8-10, 14), reliance on medical imaging and exams (*id.* at 10-13), and failure to properly analyze his treatment and work history (*id.* at 13-14) resulted in an improper

analysis under the Ruling. Having considered the ALJ's decision and the administrative record, the undersigned disagrees.

V.  **Analysis**

   A.  **Symptom Assessment under SSR 16-3p.**

As noted above, Plaintiff's overarching argument focuses on the ALJ's consideration of his reported symptoms. Generally, when evaluating a claimant's symptoms, the ALJ uses a two-step process.[1] *See* SSR 16-3p, at *2; *see also* 20 C.F.R. § 404.1529 (regulation governing the evaluation of symptoms). First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities that could reasonably be expected to produce the symptoms alleged. SSR 16-3p, at *3. Second, once such impairment(s) are established, the ALJ must evaluate the intensity and persistence of the symptoms so she can determine how they limit the claimant's capacity to work. *Id*. at *4.

Factors the ALJ should consider as part of this evaluation include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medication; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id*. at *7-*8. The ALJ's findings regarding symptoms "should be closely and affirmatively linked

---

[1] Tenth Circuit precedent has characterized this as a three-step process, citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012). The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*. *Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). The term "credibility," however, is no longer used. SSR 16-3p, at *2.

to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). However, a "formalistic factor-by-factor recitation of the evidence" is not required where the ALJ states "the specific evidence [she] relies on" in the evaluation. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).[2]

B. **The ALJ's Symptom Analysis.**

Here, the ALJ's opinion adequately accounted for Plaintiff's symptoms. After finding his obesity, lumbar degenerative disc disease/stenosis, lumbar facet arthropathy, lumbar radiculopathy, lumbar post-laminectomy syndrome, and chronic pain syndrome to be severe at step two (R. 34), the ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms" (R. 39). Next, the ALJ considered whether Plaintiff's subjective statements regarding his impairments, when evaluated alongside other objective evidence, led to the conclusion that Plaintiff was disabled. Though she ultimately found that "claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (*id.*), she

---

[2] That is not to say the ALJ may simply make "a single, conclusory statement" that the individual's symptoms have been considered or that the claimant's statements are/are not consistent. SSR 16-3p, at *10. Rather, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

6

sufficiently considered Plaintiff's subjective complaints. Specifically, the ALJ weighed Plaintiff's daily activities (R. 38-39[3]); the location, duration, frequency, and intensity of his symptoms (R. 38-44[4]); precipitating and aggravating factors (R. 38-42[5]); the type, dosage, effectiveness, and side effects of medications (R. 43-44[6]); the other treatment he

---

[3] The ALJ discussed Plaintiff's testimony that he could live independently, drive short distances, dress and take a shower, wash dishes, do laundry, and cook. (R. 38-39.) The ALJ also considered that Plaintiff reported he did not shop in stores; napped daily for between 30 minutes and 3 hours; could not mop, sweep, or vacuum; and often laid down due to pain. (*Id.*)

[4] The ALJ noted Plaintiff's testimony that he had pain in his baseline and middle back that radiated down both legs, preventing him from standing for more than 5-10 minutes or sitting or walking for more than 2 minutes. (R. 38.) The ALJ noted that Plaintiff testified nothing alleviated his pain. (*Id.*) The ALJ also observed that, when presenting for treatment, Plaintiff often reported leg pain; low back pain; burning, numbness, and tingling in his anterior thighs; pain he rated as a 3 or 4 out of 10; and pain made worse with activity, such as standing, walking, physical therapy, and coughing, but made better by lying supine. (R. 39-44.) Conversely, the ALJ observed that Plaintiff, at times, reported no weakness, balance issues, or significant pain. (R. 43.) Further, the ALJ observed that, upon physical examination, Plaintiff frequently presented in no apparent distress; with the ability to transition from sit to stand; no footdrop or high steppage gait; the ability to perform a single leg squat on each side with minimal balance problems; well-preserved toe walking; normal/good strength and reflexes; negative Babinski test, bilateral straight leg raises, Homan's sign, and Femoral stretch test; good range of motion in his hips, knees, upper extremities, cervical spine, and lumbar spine; normal gait and ambulation; and no tenderness in his thoracic spine. (R. 39-43.) However, the ALJ noted that Plaintiff also presented, upon exam, with pain on forward flexion and extension of his lumbar spine; positive lumbar facet loading and lumbosacral paraspinal tenderness on palpation; weakness in his legs; mildly reduced lumbar range of motion and mild pain upon range of motion; slow gait; and a mild limp. (R. 40-43.)

[5] The ALJ noted Plaintiff's reports of aggravating factors such as walking, sitting, standing, lifting, coughing, physical therapy, and doing certain housework. (R. 38-42.)

[6] The ALJ noted that, at times during Plaintiff's course of treatment, he was prescribed Lyrica, Celebrex, Meloxicam, and Neurontin. (R. 43-44.)

received for symptom relief (R. 39-44[7]); and other factors concerning Plaintiff's functional limitations and restrictions due to pain (R. 38, 44-45[8]).

Only in light of this analysis did the ALJ hold that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not wholly consistent with the record. This was an adequate evaluation under the regulation and SSR 16-3p.

###    C.    Alleged Errors in the ALJ's Symptom Analysis.

In his brief, Plaintiff identifies multiple purported flaws in the ALJ's assessment of his symptoms—specifically in her consideration of the pain that impeded his ability to stand and walk, and required he lie down.[9] (ECF No. 13 at 8-14.) Each alleged error focuses on the ALJ's consideration of evidence within that analysis. (*Id.*) Because the undersigned finds the ALJ's symptom evaluation to have been proper, there was no error.

####       1.    Consideration of Plaintiff's daily activities

First, Plaintiff argues that the "ALJ's reliance on [Claimant's] ability to bathe and do dishes[] was misplaced," because the ALJ "failed to explain how [Claimant's] minimal

---

[7] The ALJ noted that Plaintiff used a cane—but was not prescribed one—and was prescribed a back brace that he wore daily. (R. 39.) The ALJ also noted that Plaintiff underwent back surgery in 2016, which resulted in some, but not total, improvement; was recommended epidural steroid injections; underwent a spinal cord implant; engaged in six weeks of physical therapy; and was given sacroiliac joint injections. (R. 39-44.)

[8] In addition to the functional limitations discussed above, the ALJ noted Plaintiff's testimony that he could lift a 20-pound bag of dog food. (R. 38.) Further, the ALJ outlined the prior administrative medical findings of Dr. Mahendra Shah, who found Plaintiff capable of sitting for 6 hours; standing/walking for 6 hours; lifting 10 pounds frequently and 20 pounds occasionally; occasionally stooping; and never climbing ladders, ropes, or scaffolds. (R. 44-45.)

[9] While Plaintiff takes issue with how the ALJ analyzed his symptoms, Plaintiff does not argue that the ALJ ignored any symptoms. As such, the Court will not consider whether any error resulted from the ALJ's failure to explicitly mention Plaintiff's testimony that he had to lie down all day for 5-6 days a month. (*Cf.* R. 70 *with* R. 38-39 (noting only that Plaintiff "also said he laid down during the [sic] due to pain").) *See Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009) (issues may be waived if not developed before the court).

activities of caring for himself, bathing, and doing dishes were inconsistent with his testimony." (*Id.* at 9.) Plaintiff also argues that the ALJ failed "to consider the specific limitations [Claimant] alleged when performing these activities." (*Id.*) The Court finds both contentions unpersuasive.

As Plaintiff allows, under SSR 16-3p, a claimant's daily activities are one of the factors the Administration contemplates when evaluating symptoms.[10] *See* SSR 16-3p, at \*7. In this case, the ALJ addressed Plaintiff's testimony regarding his daily activities. *See supra* n.3. Though Plaintiff maintains the ALJ declined to explain how this testimony was inconsistent with the record, the Court disagrees. The ALJ discussed Plaintiff's testimony and explicitly stated why she believed it was inconsistent: "Notably, although the claimant reported problems standing for long, during testimony the claimant denied problems with self-care or bathing; he also said he was able to wash dishes." (R. 44.) As the Court can follow the ALJ's reasoning, it is sufficient. *Keyes-Zachary*, 695 F.3d at 1166.

Similarly, though Plaintiff maintains the ALJ's analysis was in error because it failed to consider the specific limitations that Plaintiff testified he retained while engaging in daily activities, the ALJ was well aware of his testimony (R. 38-39) and well aware of the exertional limitations Plaintiff alleged (*id.*). The mere fact that the ALJ did not recount, verbatim, each one of Plaintiff's stated limitations does not render the analysis in error. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (the ALJ is required to consider, but not discuss, every piece of evidence); *see also Bell v. Colvin*, 645 F. App'x

---

[10] The Court notes that an ALJ's symptom assessment is often not limited to a single paragraph in the decision. *See, e.g.*, *Scott v. Berryhill*, 695 F. App'x 399, 404-05 (10th Cir. 2017) (unpublished) (observing that the ALJ's symptom findings were "scattered throughout her decision" and "[w]hen considered together, they demonstrate the ALJ's compliance with her duty to evaluate and discuss factors relevant to the claimant's" symptoms).

608, 613 (10th Cir. 2016) (unpublished) (using prior "credibility" language and finding the claimant's contention that the ALJ erroneously evaluated her activities unpersuasive since her "purported difficulties . . . were supported mostly by her own statements and testimony, which the ALJ found to be only partially credible").[11] Furthermore, even if the ALJ failed to consider Plaintiff's testimony that his daily activities were done subject to alleged limitations (R. 70-71), Plaintiff's activities were far from the only factor the ALJ assessed as a part of her symptom analysis (R. 38-46). *See also supra* nn.4-8. The ALJ considered all of Plaintiff's reported symptoms and activities, along with the objective medical and opinion evidence, before determining the intensity, persistence, and limiting effects of those symptoms. This was adequate under the Ruling and regulation.

Lastly, in a relatively undeveloped argument, Plaintiff maintains that "even if [Claimant] engaged in self-care activities and bathed without limitation, such abilities are not an appropriate basis to discount [his] disabling pain." (ECF No. 13 at 10.) Plaintiff cites *Thompson v. Sullivan*, 987 F.2d 1482 (10th Cir. 1993) for this contention. (*Id.*) As the Court has already noted, the ALJ did not discount the intensity, persistence, and limiting effects of Plaintiff's pain solely because of his daily activities. *See supra* nn.4-8. Instead, the ALJ considered these activities in conjunction with the record as a whole.

Nor does *Thompson* render the ALJ's analysis improper. *Thompson* stands for the proposition that <u>disproportionate</u> reliance on minimal and sporadic daily activities to undercut a claimant's allegations of disabling pain is improper. *See Thompson*, 987 F.2d at 1490 ("the ALJ may not rely on minimal daily activities," such as sporadic performance of household tasks, "as substantial evidence that a claimant does not suffer disabling

---

[11] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

pain"). It does not, however, preclude consideration of daily activities in the symptom analysis. *See* SSR 16-3p, at *7; *see also* 20 C.F.R. § 404.1529(c)(3)(i).

Instead, this and other cases make clear that the ALJ looks at all the evidence when conducting her analysis, which may include even minimal daily activities when coupled with other, substantial evidence in the record. *See, e.g.*, *Howard v. Astrue*, No. CIV.A. 11-1035-JWL, 2011 WL 6151408, at *6 (D. Kan. Dec. 12, 2011) ("the ALJ's use of Plaintiff's daily activities constitutes substantial evidence supporting the finding that Plaintiff's allegations are not" consistent "when considered in conjunction with . . . medical evidence"); *Valles v. Colvin*, No. 14-CV-02019-KMT, 2015 WL 5579573, at *5 (D. Colo. Sept. 23, 2015) ("more significant" daily activities—such as caring for a child, caring for personal needs, assisting with cooking, making a bed, driving, cleaning laundry, shopping for groceries every two weeks, and attending church—surpassed the "minimal" and "sporadic" activities contemplated by *Thompson*); *Beagles v. Saul*, No. CIV-19-315-JFH-SPS, 2021 WL 1134303, at *5 (E.D. Okla. Feb. 23, 2021) ("While it is true that 'sporadic performance [of activities of daily living] does not establish that a person is capable of engaging in substantial gainful activity,' the claimant's daily activities were not the sole basis for assessing her subjective statements"), *R&R adopted*, 2021 WL 1123611 (Mar. 24, 2021).

In this case, unlike *Thompson*, the ALJ relied on more than sporadic, minimal activities in her evaluation of Plaintiff's symptoms. The undersigned finds no error.

    **2.**    **Reliance on objective evidence, exam findings, and treatment history**

Next, Plaintiff argues the objective medical findings in the record did not constitute substantial evidence to support the ALJ's symptom analysis. (ECF No. 13 at 10-13.) The Court rejects these arguments.

### a) The ALJ did not rely solely on objective medical evidence to discount the severity of Plaintiff's symptoms.

Plaintiff begins by arguing that, other than the inconsistency in Plaintiff's symptom testimony, the "only other reasoning the ALJ gave for finding [Claimant's] reports to be inconsistent with the record was because she found they were inconsistent with the objective medical evidence—specifically the imaging of his spine which did not show 'severe' abnormalities and examination findings such as negative straight leg raises." (*Id.* at 10.) Plaintiff claims this is problematic because "a lack of consistency with objective medical evidence cannot be the only rational for finding [Claimant's] reports inconsistent." (*Id.* (citing 20 C.F.R. § 404.1529(c)(2)).[12]) Relying on the arguments discussed above, Plaintiff claims that while "the ALJ also attempted to rely on [Claimant's] activities, because that reasoning was not supported the only remaining reason was inconsistency with the objective evidence which alone is not sufficient." (*Id.* at 10-11.)

This contention is easily disposed of. As the undersigned found that the ALJ's assessment of Plaintiff's testimony was appropriate, the ALJ did not rely solely on objective medical evidence to discount his symptoms. Because the ALJ conducted a full review of the record, there was no error.

---

[12] "[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2).

12

### b) The ALJ did not pick and choose medical examination findings.

Next, Plaintiff maintains that even if the ALJ's reliance on objective medical evidence was allowable, it was flawed. (*Id.* at 11-12.) Plaintiff contends that "the ALJ's reliance on such normal examination findings at the expense of other abnormalities was misplaced," arguing that the "ALJ should not have relied solely on the more normal findings when the other evidence of record contains findings that corroborate [Claimant's] testimony." (*Id.* at 11.) The "other abnormalities" Plaintiff cites include examinations where he presented with a slow gait, a mild limp, tenderness in the lumbar spine, and decreased or painful range of motion. (*Id.*) As previously outlined, the ALJ explicitly considered these abnormal examination findings and incorporated them into her symptom analysis. *See supra* n.4. The ALJ did not pick and choose from among the record, but considered these findings and reached a conclusion that Plaintiff disagrees with. As the ALJ considered the evidence she was required to, the undersigned cannot reweigh such evidence to reach a conclusion more favorable to Plaintiff. *See Bowman*, 511 F.3d at 1272. Plaintiff's argument is, therefore, unpersuasive.

### c) The ALJ's reliance on Dr. Drake's exam notations.

Plaintiff also contends that any reliance on Dr. Richard Drake's statements regarding Plaintiff's 2020 lumbar CT scan "should not be considered substantial evidence supporting [the ALJ's] finding." (ECF No. 13 at 12-13.)

In her decision, the ALJ cited Dr. Drake's treatment notes as follows: "Although moderate foraminal stenosis of the L4-5 supports some physical limitations, the record reflects that [Plaintiff's] moderate foraminal stenosis did not account for the significant symptoms the claimant reported." (R. 44.) The ALJ's notation relies on a note from Dr.

13

Drake, wherein he recounted a discussion he had with Plaintiff regarding a CT myelogram taken in October 2020:

> I had a long discussion with [Claimant] today regarding his treatment alternatives and diagnosis. I discussed the CT myelogram findings including a paucity of central canal stenosis or lateral recess stenosis. He does have moderate foraminal stenosis at L4-5 which certainly would not account for the significant symptoms he is currently having. I have discussed treatment options. I encouraged earnest attempts at weight loss and improvement of conditioning. I offered him a referral to physical therapy as well as . . . a referral for a trial of epidural steroid injections.

(R. 593.) Plaintiff argues that the ALJ's reliance on this note was improper for two reasons. (ECF No. 13 at 12.)

First, while the ALJ and Dr. Drake mentioned the "moderate" findings of the lumbar CT, Plaintiff claims that both "overlooked the fact that the lumbar CT did not show only moderate abnormalities[,] but also 'high grade' foraminal stenosis on the right at the L4-5 level." (*Id.*) Yet, neither the ALJ nor Dr. Drake ignored these findings.

On October 21, 2020, Plaintiff presented for a lumbar CT, post-myelogram. (R. 600.) This imaging revealed that at the L4-L5 level, Plaintiff had "moderate to high-grade right foraminal stenosis" and "[m]oderate left foraminal stenosis." (*Id.*) In the summary of these findings, the examiner noted: "Findings are most pronounced at L4-5 where there is high-grade right and moderate left foraminal stenosis." (*Id.*) On November 19, 2020, Dr. Drake discussed this imaging with Plaintiff, noting that the CT myelogram revealed "multilevel degenerative spondylosis . . . most pronounced at L4-5 where there is significant right-sided foraminal stenosis" but "no area of significant central canal stenosis or significant lateral recess stenosis." (R. 584.)

The ALJ considered this CT in her decision, noting that "[o]n October 21, 2020, the claimant had a computerized tomography scan of his lumbar spine" where the "impression was the claimant had lumbar spine degenerative changes with multilevel

14

stenosis, which was most pronounced at the L4-5 level where there was high-grade right and moderate left foraminal stenosis." (R. 43.)

Still, Plaintiff claims that both the ALJ and Dr. Drake overlooked the "high-grade" right L4-5 foraminal stenosis. This was simply not the case. While Dr. Drake—and the ALJ, in reliance on Dr. Drake's notes—did not describe Plaintiff's foraminal stenosis as "high-grade" *in toto*,[13] it is incorrect to suggest that either ignored the CT findings.

Second, Plaintiff argues that the ALJ improperly relied on Dr. Drake's statements because "it is unclear what Dr. Drake found was not consistent with the CT findings." (ECF No. 13 at 12.) Pointing to district court cases describing foraminal stenosis and an internet source, Plaintiff notes that the symptoms he reported the day of the exam are "commonly associated with foraminal stenosis." (*Id.*) According to Plaintiff, it is unclear why Dr. Drake found these symptoms inconsistent with his assessment of moderate foraminal stenosis. Considering Dr. Drake's notation in conjunction with his past treatment of Plaintiff, however, the undersigned finds no error.

In his note, Dr. Drake stated that Plaintiff had "moderate foraminal stenosis at L4-5 which certainly would not account for the significant symptoms he is currently having." (R. 593.) The symptoms Plaintiff reported the day of the visit included continued lumbar and lumbosacral pain that radiated into his buttocks and anterior thighs and which limited his activities of daily living. (R. 591.) Dr. Drake noted that these symptoms had not improved since previous visits, where Plaintiff also reported axial low back pain that

---

[13] Plaintiff, in his argument, fails to acknowledge that this "high-grade" foraminal stenosis was only on the right side of his lumbar spine, and that the left was "moderate." (R. 600.) The undersigned sees no problem with the ALJ's reliance on Dr. Drake's medical interpretation of this CT, which appears to describe the whole of Plaintiff's foraminal stenosis as moderate, without differentiating between the right and left side of his lumbar spine.

15

was not relieved through a spinal cord stimulator, that worsened with walking and standing, and that radiated into the "bilateral lateral aspects" of his thighs. (R. 578.)

These appear to be the symptoms Dr. Drake was referring to when he made the at-issue notation. Plaintiff reported relevant symptoms the day of the exam and consistently reported severe back pain, which radiated to his lower extremities, throughout treatment. The simple fact that his symptoms might have been consistent with descriptions of foraminal stenosis does not render Dr. Drake's notation unclear. Dr. Drake—as Plaintiff's physician—was well equipped to assess the severity of Plaintiff's symptoms in light of his diagnosed moderate foraminal stenosis. Likewise, it was appropriate for the ALJ to rely on this assessment. Plaintiff has pointed to nothing other than his own lay medical interpretation of foraminal stenosis as evidence that Dr. Drake's findings were improper. Plaintiff's opinion is not a substitute for medical evidence. *See* 20 C.F.R. 404.1513(a)(1)-(3).

### d) ALJ's consideration of Plaintiff's treatment history.

In Plaintiff's last argument regarding the medical evidence, he maintains: "while the ALJ summarized [Claimant's] treatment history, she failed to explain how it impacted her evaluation of [Claimant's] subjective statements" and failed to "explain 'the link between the evidence and' the consistency determination." (ECF No. 13 at 13 (citing *Kepler*, 68 F.3d at 391).) Plaintiff then points to the variety of sources from which he sought care and the various treatments and medications he used for pain relief. (*Id.*) Because the ALJ evaluated the record sufficiently and linked evidence to her symptom findings, the undersigned finds no error.

Despite Plaintiff's claims, the ALJ sufficiently tied her symptom findings to evidence in the record. In addition to the evidence discussed as a part of her overall

16

evaluation, the ALJ highlighted some of the evidence she believed supported her consistency finding in a separate paragraph discussing "claimant's statements about the intensity, persistence, and limiting effects of his . . . symptoms . . . ." (R. 44.) The ALJ noted that Plaintiff's symptom testimony was "inconsistent because imaging failed to show severe degenerative disc disease or stenosis consistent with his reports of pain;" because "the record reflects that his moderate foraminal stenosis did not account for the significant symptoms" he reported; because "his straight leg raise tests are generally negative and[,] apart from one finding of a slow and a mild limp, his gait is generally found to be normal;" and because "although the claimant reported problems standing for long, during testimony the claimant denied problems with self-care or bathing" and also reported he was "able to wash dishes." (*Id.*) This explicit linking of the evidence to the ALJ's symptom findings—in tandem with the extensive consideration of the administrative record (R. 38-45) and discussion of evidence supporting the RFC (R. 45-46)—is substantial evidence in support of her decision. Because the ALJ also considered Plaintiff's treatment history, medication, and use of non-medical treatment (nn.4-7), Plaintiff's arguments are unsuccessful.

### 3. Discussion of Plaintiff's work history

In Plaintiff's final argument, he again claims the ALJ erred in her symptom analysis, this time contending that "the ALJ did not consider [Claimant's] significant work history when evaluating the consistency of his reports." (ECF No. 13 at 13-14.) While the ALJ did not explicitly discuss Plaintiff's work history in the paragraphs outlining her symptom findings, she in no way omitted consideration of his work from her decision. As such, there was no error.

Pursuant to 20 C.F.R. § 404.1529(c)(3), as a part of her analysis, the ALJ will consider other, non-medical evidence related to a claimant's symptoms. This may include information about the claimant's prior work record, his own statements about his symptoms, evidence submitted by medical sources, and observations by employees or other persons. *Id.* As the undersigned has already discussed, the ALJ's analysis included a number of these factors. Plaintiff has not shown that the ALJ wholly failed to consider "other evidence" as contemplated by 20 C.F.R. § 404.1529(c)(3).

Moreover, the ALJ also <u>considered</u> Plaintiff's work history—noting the work Plaintiff engaged in after his alleged onset date at step one (R. 34) and his past relevant work at step four (R. 46). Even though this history was not explicitly rehashed in her discussion of Plaintiff's symptoms, the ALJ is not required to discuss every piece of evidence she considered. *See, e.g., Bell*, 645 F. App'x at 613 (factors the claimant "contends were ignored by the ALJ include . . . her good work history," but the ALJ "is not required to discuss every piece of evidence" and the court declined to reweigh evidence even assuming the factors were relevant (quoting *Wall*, 561 F.3d at 1067)) (unpublished). The undersigned is unpersuaded that the ALJ erred in her assessment of Plaintiff's prior work history or the "other evidence" described in 20 C.F.R. § 404.1529(c)(3).

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

SO ORDERED this 11th day of August, 2023.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

18